Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James H. Alesia | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 292 | **DATE** | November 15, 2001 |
| **CASE TITLE** | *Jean Johnstone vs. Bank of America, N.A. and Ticor Title Insurance Co.* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]



**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]     Enter Memorandum Opinion and Order.  The court grants in part and denies in part defendant Bank of America's motion to dismiss.  [28-1]

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | **Document Number** |
| | No notices required. | | number of notices | | |
| | Notices mailed by judge's staff. | | | | |
| ✓ | Notified counsel by telephone. | | NOV 1 6 2001 | | 57 |
| | Docketing to mail notices. | | date docketed | | |
| | Mail AO 450 form. | | | | |
| | Copy to judge/magistrate judge. | | docketing deputy initials | | |
| | CW | courtroom deputy's initials | 01 NOV 15 PM 5: 26 | date mailed notice | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

DOCKETED
NOV 1 6 2001

JEAN JOHNSTONE,                          )
                                         )
            Plaintiff,                   )
                                         )
      v.                                 )    **Case No: 01 C 292**
                                         )
BANK OF AMERICA, N.A. and                )    **Judge James H. Alesia**
TICOR TITLE INSURANCE COMPANY,           )
                                         )
            Defendants.                  )

## MEMORANDUM OPINION AND ORDER

Before the court is defendant Bank of America, N.A.'s motion to dismiss Counts I, II, and IV of plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). For the following reasons, the court grants defendant's motion as to Counts I and II only insofar as plaintiff has failed to state a claim for damage to her credit rating. The court denies defendant's motion as to all other claims in Counts I and II. The court grants defendant's motion as to Count IV.

## I. BACKGROUND

On or about November 2, 1998, plaintiff Jean A. Johnstone ("Johnstone") obtained a residential mortgage loan from defendant Bank of America, N.A. ("the Bank"). As part of that transaction, the Bank required Johnstone to pay off her 1996 back taxes. Johnstone paid $6,900.00 to Ticor Title Insurance ("Ticor") in order to satisfy this obligation. As a result of problems with the transaction, Johnstone's 1996 taxes were not paid.



The Bank disbursed funds from Johnstone's escrow to redeem the 1996 taxes and forced placed insurance on Johnstone and removed an additional $2,145.00 from escrow. The Bank increased Johnstone's monthly payment. Johnstone alleges that defendants have not accounted for $822.47 of the $6,900.00 that Johnstone paid Ticor.

On October 14, 1999, Johnstone sent a letter to the Bank. In that letter, she informed the Bank of four problems with her mortgage: (1) Johnstone's personal bank, Old Kent Bank, incorrectly returned her August mortgage payment for insufficient funds; (2) the Bank returned Johnstone's September payment; (3) the Bank forced placed insurance on Johnstone and paid for that insurance by deducting $2,145 from Johnstone's tax escrow and (4) Johnstone's taxes were not paid despite her making payments to her tax escrow. The Bank responded to Johnstone's letter, but never sent proof that her escrow account was credited for the forced placed insurance and did not correct Johnstone's tax escrow problem.

On March 10, 2000, Johnstone wrote a second letter to the Bank and asked the Bank to correct her tax problem. In this letter, Johnstone specifically asked the bank to (1) return her original check to her; (2) provide proof of her tax payments from November 1998; and (3) update her payment table to indicate that her payments were not late and correct any negative reports that the Bank may have made to credit bureaus. The Bank responded in a letter dated March 20, 2000. Johnstone claims that the Bank misconstrued her problem in that letter. At some time prior to March 20, the Bank had increased Johnstone's monthly payment to pay for the back taxes. As of March 20, however, Johnstone's loan was current.

2

On April 4, 2000, Johnstone sent the Bank a third letter in which she disputed the amount that she owed the Bank as well as the increase in her monthly payment. Johnstone alleges that the Bank filed one or more reports with one or more credit bureaus in which the Bank falsely asserted that Johnstone's payments were late and that she was delinquent. Johnstone alleges that she made the payments in the proper amount but the Bank returned those payments to Johnstone. Johnstone also claims that the Bank failed to correct her account within sixty days and that it has instituted foreclosure proceedings on her home.

Johnstone filed this lawsuit, three counts of which assert claims against the Bank.[1] Count I asserts a class claim against the Bank for violations of the Cranston-Gonzales Amendments to the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605. Count II asserts an individual claim against the Bank for violations of the Cranston-Gonzales Amendments. Count IV claims that the Bank breached its contractual duty of good faith. The Bank now brings this motion to dismiss Counts I, II, and IV, pursuant to Rule 12(b)(6). Particularly, the Bank argues that Counts I and II should be dismissed because they fail to adequately allege actual damages under RESPA and that Count IV should be dismissed because Illinois law does not provide an independent cause of action for breach of good faith.

---

[1]Johnstone brings Count III only against Ticor. Consequently, that count is not within the court's consideration in ruling upon the Bank's motion to dismiss.

3

## II. DISCUSSION

**A.**     **Standard for Deciding a Motion to Dismiss**

In ruling on a motion to dismiss under Rule 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1019 (7th Cir. 1992). If, when viewed in the light most favorable to the plaintiff, the complaint fails to state a claim upon which relief can be granted, the court must dismiss the case. *See* FED. R. CIV. P. 12(b)(6); *Gomez v. Ill. State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir. 1987). The court may dismiss the complaint only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

Also, according to Federal Rule of Civil Procedure 10(c), "A copy of any written instrument which is an exhibit to a pleading is part thereof for all purposes." The Seventh Circuit has interpreted "written instrument" as including loan documentation and correspondence between parties. *N. Ind. Gun & Outdoor Shows v. City of South Bend*, 163 F.3d 449, 453 (7th Cir. 1998). Accordingly, in ruling on the Bank's motion to dismiss, it is appropriate for the court to consider the HUD-1 Settlement Statement and the four letters attached to Johnstone's amended complaint as Exhibits A through E. *See Egert v. FT Mort. Cos.*, No. 99 C 313, 1999 WL 528517 at *1 n.2 (N.D. Ill. July 16, 1999) (considering loan documentation attached to defendant's motion to dismiss in ruling on the motion).

4

**B.    RESPA Claims**

Johnstone claims that the Bank has violated RESPA with respect to both herself, as an individual, and her alleged class by reporting her and others to a credit bureau within sixty days of receiving a letter that disputed payments, in violation of 12 U.S.C. § 2605(e)(3).  She also claims that the Bank has violated RESPA with respect to her individually by failing to correct her accounts within sixty days, a violation of 12 U.S.C. § 2605(e)(2)(A).  Johnstone claims that those alleged violations of RESPA entitle her and the class to damages as described in 12 U.S.C. § 2505(f).  Particularly, Johnstone claims that, as a result of the Bank's statutory violations, she has been damaged in the following ways:  (1) she has suffered mental anguish, inconvenience, and worries that she will lose her home; (2) her credit rating has been damaged; (3) she has paid late fees; (4) the Bank has foreclosed on her property; and (5) she has spent considerable time attempting to resolve the problems with her mortgage.  (Am. Compl. at ¶ 38.)  The Bank argues that Johnstone has failed to state a claim for compensable damages that have resulted from its alleged statutory violations and that, consequently, Johnstone's claims must be dismissed.

In order to determine whether Johnstone has stated a claim for actual damages under RESPA, the court must first look at the terms of RESPA to determine what damages it allows and then determine whether each of Johnstone's claims for damages constitutes a claim for actual damages under RESPA.

**1.    The Cranston-Gonzales Amendments to RESPA**

The Cranston-Gonzales Amendments place certain requirements upon servicers of federally related mortgage loans that receive a qualified written request regarding one of those

5

loans from a borrower. The servicer must acknowledge receipt of such a written request in

writing within twenty days of receiving the borrower's letter. 12 U.S.C. § 2605(e)(1)(A). The

servicer must then do one of three things within sixty days of receiving the letter: (1) correct the

borrower's account and inform the borrower of those corrections in writing; (2) investigate and

provide a written explanation to the borrower of the reasons that the servicer believes the

borrower's account is correct; or (3) investigate and provide a written explanation to the

borrower of the reasons that the servicer cannot obtain the information that the borrower is

requesting. 12 U.S.C. § 2605(e)(2). Also, during the sixty days following the servicer's receipt

of the borrower's letter, the servicer may not provide information regarding an overdue payment

relating to the borrower's letter to a consumer reporting agency. 12 U.S.C. § 2605(e)(3).

A plaintiff can recover actual damages that he or she suffers as a result of violations of

the Cranston-Gonzales Amendments. According to 12 U.S.C. § 2605(f):

> Whoever fails to comply with any provision of this section shall be liable
> to the borrower for each such failure in the following amounts:
> (1) Individuals
> In the case of any action by an individual, an amount equal to the
> sum of—
>> (A) any actual damages to the borrower as a result of the
>> failure; and
>> (B) any additional damages, as the court may allow, in the
>> case of a pattern or practice of noncompliance with the
>> requirements of this section, in an amount not to exceed
>> $1,000.
> (2) Class Actions
> In the case of a class action, an amount equal to the sum of—
>> (A) any actual damages to each of the borrowers in the
>> class as a result of the failure; and
>> (B) any additional damages, as the court may allow, in the
>> case of a pattern or practice of noncompliance with the
>> requirements of this section, in an amount not greater than

> $1,000 for each member of the class, except that the total
> amount of damages under this subparagraph in any class
> action may not exceed the lesser of—
> > (i) $500,000; or
> > (ii) 1 percent of the net worth of the servicer.

12 U.S.C. § 2605(f). Johnstone argues that she is entitled to recover actual damages for the

Bank's alleged violations of RESPA. The Bank argues that Johnstone has failed to state a claim

for actual damages that she has suffered as a result of the Bank's alleged RESPA violations.

### 2.    Alleging Actual Damages Under RESPA

The Bank argues that Johnstone fails to state a claim because she has not adequately

alleged compensable damages resulting from the Bank's alleged violation of 12 U.S.C. §

2605(e). Particularly, the Bank claims: (1) Johnstone's claims that she has paid late fees and

that the Bank has instituted foreclosure against her property were not proximately caused by the

Bank's alleged RESPA violations; (2) Johnstone's claims for mental anguish, inconvenience,

worry and time are non-economic losses that are not considered actual damages under RESPA;

and (3) Johnstone's claim that she suffered damage to her credit rating merely restates the Bank's

alleged RESPA violation and does not state a claim for damages. Johnstone responds by

arguing: (1) the late fees that she has incurred, as well as the foreclosure pending against her

property were proximately caused by the Bank's alleged RESPA violation and (2) actual

damages, for RESPA purposes, include mental anguish and time that a plaintiff spends on her

case. Johnstone offers no argument to persuade the court that damage to one's credit rating is

a compensable injury.

7

### a.    Late fees and foreclosure proceedings

The Bank argues that the late fees and foreclosure were not proximately caused by the Bank's alleged RESPA violations.  Johnstone responds by arguing that her amended complaint does, in fact, allege a causal connection between the Bank's alleged RESPA violations and the late fees and foreclosure.  The court agrees with Johnstone.

In ruling on a motion to dismiss, a court is only to test the sufficiency of the complaint, not to decide the merits of the case.  *Gibson v. Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). At this time, therefore, the question before the court is only whether Johnstone has properly stated a claim that asserts causation between the Bank's alleged RESPA violations and the late fees and foreclosure.

According to Count II of Johnstone's amended complaint:

> *As a result of Bank of America violating § 2605(e)* by (1) failing to correct her problem within 60 days and (2) reporting plaintiff as delinquent to a credit bureau or bureaus within 60 days from receiving Ms. Johnstone's letter which disputed the amount of the debt. *Ms. Johnstone has ... (3) has paid late fees; (4) Bank of America has foreclosed on her property*, which seeks attorney fees.

(Am. Compl. at ¶ 38) (emphasis added).  This paragraph of the amended complaint clearly alleges a causal connection between the Bank's alleged RESPA violations and the late fees and foreclosure incurred by Johnstone.

The Bank also argues that because 12 U.S.C. § 2605(e) provides a servicer with three alternative means to satisfy its obligations, the mere fact that the servicer failed to meet one of those obligations does not necessarily mean that it has failed to comply with RESPA.  Because, however, Johnstone's amended complaint alleges that the Bank violated both 12 U.S.C. §

8

2605(e)(2)(A) and (e)(3), the court concludes that Johnstone has stated a claim. The court is unpersuaded by the Bank's arguments on this point and finds that Johnstone has stated a claim for actual damages that she has suffered as a result of the Bank's alleged failure to comply with RESPA.

### b.    Mental suffering and constant worry

The Bank argues that Johnstone's claims for mental anguish and constant worry are not claims for actual damages under RESPA. Johnstone contends, however, that RESPA allows a plaintiff to seek actual damages for mental anguish. Neither the Supreme Court nor the Seventh Circuit has addressed this issue and, thus, this issue appears to be one of first impression in this circuit. Johnstone and the Bank each cite cases from districts outside this circuit to support their arguments. The court agrees with Johnstone on this point.

Johnstone cites a case from the Middle District of Alabama that holds that RESPA allows a plaintiff to recover actual damages for emotional distress for violations of 12 U.S.C. §§ 2605(e)(1) and (e)(2). *Rawlings v. Dovenmuehle Mort., Inc.*, 64 F. Supp. 2d 1156 (M.D. Ala. 1999). In *Rawlings*, the plaintiffs sued the defendants for failing to notify the plaintiffs of their receipt of qualified written requests and for failing to take appropriate action upon those requests. *Id.* at 1160. The plaintiffs alleged that they suffered mental anguish as a result of the defendants' RESPA violations. *Id.* at 1164. The court in *Rawlings* first looked to the language of RESPA and its legislative history in determining that Congress intended RESPA to be a remedial consumer protection statute. *Id.* at 1166. The court then analyzed cases interpreting other consumer protection statutes such as the Fair Credit Reporting Act ("FCRA") and the Fair

9

Debt Collection Practices Act ("FDCPA") in concluding that actual damages under RESPA include recovery for mental anguish. *Id.* at 1166-67. The court finds the analysis of *Rawlings* applicable to this case.

Additionally, another court in the Northern District of Illinois has surveyed the availability of damages for emotional distress under "actual damages" provisions in statutes similar to RESPA. In *Hrubec v. Nat'l R.R. Pass. Corp.*, 829 F. Supp. 1502 (N.D. Ill. 1993), the court explained that actual damages allows the recovery of damages for emotional distress under the FCRA, the Privacy Act, the Equal Credit Opportunity Act ("ECOA"), the Fair Housing Act ("FHA"), and 42 U.S.C. § 1983. 829 F. Supp. at 1505. It then concluded that a plaintiff can recover actual damages for emotional distress under 26 U.S.C. § 7431 of the Internal Revenue Code for improper disclosure of a taxpayer's tax return information. 829 F. Supp. at 1506, *citing* 26 U.S.C. § 7431. Because some of the statutes discussed in *Hrubec* contain an "actual damages" provision similar to the provision in RESPA and because each of those statutes, like RESPA, protects individuals' private information, the court's analysis in *Hrubec* is applicable to this case.

Four of the statutes discussed in *Hrubec* contain "additional damages" provisions similar to the section of RESPA at issue in this case. For example, the "actual damages" provision of the FCRA allows an aggrieved consumer to recover "any actual damages sustained by the consumer as a result of the failure [to comply with the Act]." 15 U.S.C. § 1681n(a)(1)(A). The other statutes contain similar provisions. *See, e.g.*, 5 U.S.C. § 552a(g)(4) (the Privacy Act), 15 U.S.C. 1691e(a) (the ECOA), and 26 U.S.C. § 7431(c)(1) (the Internal Revenue Code).

Moreover, the provisions of the Internal Revenue Code at issue in *Hrubec*, along with the FCRA and the Privacy Act are similar to 12 U.S.C. § 2605(e)(3) insofar as they all protect individuals' private information. Courts have allowed plaintiffs to recover actual damages for emotional distress caused by violations of those statutes. For example, the Internal Revenue Code protects individual taxpayers from unauthorized disclosure of tax return information. 26 U.S.C. § 7431. Plaintiffs can recover damages for emotional distress suffered as a result of improper disclosure of their private tax information. *Hrubec,* 829 F. Supp. at 1506. Similarly, the FCRA acknowledges the need to protect consumers' rights to privacy in their credit reporting information. 15 U.S.C. § 1681(a)(4). A plaintiff can recover actual damages for emotional distress for violations of the FCRA. *See Renninger v. Chexsystems*, 98 C 669, 1998 WL 295497 at *6 (N.D. Ill. May 21, 1998) (stating that actual damages for mental pain and suffering are allowed under FCRA). Likewise, the Privacy Act limits the disclosure of individuals' records maintained by government agencies. 5 U.S.C. § 552a(b). In *Hrubec*, the court noted that although there is a circuit split on the issue, the Fifth Circuit allowed a plaintiff to recover actual damages for emotional distress damages under the Privacy Act. 829 F. Supp. at 1505. The court in *Hrubec* agreed with the Fifth Circuit, reasoning that such damages "will compensate individuals for privacy violations by allowing damages for what, in some instances, may be the only harm resulting from the disclosure of confidential information – namely, emotional distress." 829 F. Supp. at 1057. The *Hrubec* court's rationale is applicable to this RESPA case.

Like these other statutes, the Cranston-Gonzales Amendments to RESPA contains an actual damages provision and protects borrowers from the unlawful disclosure of private

11

information. Particularly, under RESPA, a loan servicer cannot disclose information regarding a borrower's loan to a credit agency within sixty days of receiving a qualified written request from that borrower. 12 U.S.C. § 2605(e)(3). The court concludes, therefore, that RESPA allows actual damages for emotional distress.

The Bank directs the court's attention to two cases. *Katz v. Dime Sav. Bank, FSB*, 992 F. Supp. 250 (W.D. N.Y. 1997); *Aiello v. Providian Fin. Corp.*, 239 F.3d 876 (7th Cir. 2001). The court does not find the reasonings of these cases applicable to the instant case. The court in *Katz* concluded that RESPA was not a consumer protection statute and, consequently, refused to construe 12 U.S.C. § 2605(f) to allow recovery of mental anguish as actual damages. 992 F. Supp. at 255-56. However, the express terms of RESPA clearly indicate that it is, in fact, a consumer protection statute, and the court thus disagrees with the *Katz* court's analysis. *Aiello* involved a claim for emotional distress without any claim for economic damages. The *Aiello* court itself acknowledged that "if [the plaintiff] could show that she had suffered ... a financial loss, she might be permitted to piggyback a claim for damages for incidental emotional distress." *Aiello*, 239 F.3d at 881. In this case, the court has already concluded that Johnstone has stated a claim for financial loss through her claims for late fees and the foreclosure proceedings. Therefore, the court finds that *Aiello* is inapplicable to this case.

The court concludes that Johnstone's claim for mental suffering states a claim for actual damages under RESPA.

### c.    Time and inconvenience

The Bank argues that Johnstone's time spent on this case and her inconvenience are non-economic losses that are not actual damages under RESPA. Johnstone argues that 12 U.S.C. § 2605(f) allows her to recover for her time and inconvenience. Again, the court agrees with Johnstone.

Moving to dismiss Johnstone's claims for damages due to loss of time and inconvenience, the Bank argues only that those claims seek recovery for non-economic losses that cannot be recovered under RESPA. The Bank relies upon *Aiello* which, for reasons already explained, the court has distinguished and cites no other case – and the court has not found any case – to support its claim that Johnstone cannot recover for her time or inconvenience. This issue also appears to be one of first impression in this circuit. Johnstone has brought the case of *Cortez v. Keystone Bank, Inc.* to the court's attention. No. 98-2457, 2000 WL 536666 (E.D. Pa. May 2, 2000). In *Cortez*, the court from the Eastern District of Pennsylvania concluded that actual damages under RESPA "encompass compensation for any pecuniary loss including such things as time spent away from employment while preparing correspondence to the loan servicer, and expenses for preparing, photocopying and obtaining certified copies of correspondence." *Id.* at *39-40 (citing *Rawlings*, 64 F. Supp. 2d at 1164). The court concludes that Johnstone has stated a claim to recover for time spent on this case and her inconvenience, insofar as she can establish actual pecuniary loss.

13

### d.    Damage to Johnstone's credit rating

The Bank argues that Johnstone's allegation that she has suffered damage to her credit rating fails to state a claim for damages and merely restates the Bank's alleged RESPA violation. Johnstone does not respond to this argument and the court agrees with the Bank. Furthermore, other courts in this district have held that a consumer is not injured by an inaccurate credit report unless that false information is communicated to and used by a third party. *See, e.g., Renninger*, 1998 WL 295497 at *6 (rejecting plaintiff's claim for damages to her credit rating resulting from defendant's FCRA violations, despite plaintiff's allegation that she had been deterred from applying for a mortgage, because no third party had learned of the information). Because Johnstone has not alleged that any credit reporting agency that received her information from the Bank reported that information to any third party, the court concludes that her claim for damage to her credit rating does not state a claim.

In summary, the court concludes that Johnstone has stated a claim for actual damages under 12 U.S.C. § 2605(f), with regard to mental anguish, late fees, the foreclosure, and her time spent on the case. Therefore the court grants the Bank's motion to dismiss only as to Johnstone's claim for damage to her credit rating. The court denies the Bank's motion to dismiss as to all of Johnstone's other claims in Counts I and II of her amended complaint.[2]

---

[2]In the Bank's motion, it argues that Johnstone, having failed to plead actual damages, cannot salvage her claim against the Bank by claiming additional damages under RESPA. Because the court concludes that Johnstone does state a claim for actual damages, it is unnecessary to consider this alternative argument.

14

## C.     Breach of Contract Claim

In her amended complaint, Johnstone alleges breach of contract against the Bank claiming only that the Bank breached its duty of good faith. The Bank argues that the court should dismiss Count IV of the amended complaint because there is no independent cause of action for breach of the duty of good faith under Illinois law.[3] Johnstone claims that although Illinois does not recognize a cause of action in tort for breach of good faith, she brings the action as a contract action, which is allowed in Illinois. The court agrees with the Bank.

The Supreme Court of Illinois has held that there is no independent cause of action for breach of the duty of good faith and fair dealing. *Voyles v. Sandia Mort. Corp.*, 751 N.E.2d 1126 (Ill. 2001). In *Voyles*, the plaintiff sued the defendant based upon defendant's allegedly negligent reporting of plaintiff's information to credit reporting agencies. *Id.* at 1127. One of plaintiff's claims was that defendant had breached its duty of good faith and fair dealing with regard to plaintiff's mortgage. *Id.* Particularly, plaintiff claimed that defendant's failure to notify plaintiff of the increase in her mortgage payments as well as its arbitrary and capricious refusal to accept plaintiff's partial tenders and her efforts to amicably resolve the situation violated the defendant's duty of good faith. *Voyles v. Sandia Mort. Corp.*, 724 N.E.2d 1276, 1281 (Ill. App. Ct. 2000) *rev'd by Voyles*, 751 N.E.2d 1126. The Appellate Court of Illinois upheld the plaintiff's tort claim for breach of the duty of good faith. 751 N.E.2d at 1286. The Supreme Court of Illinois rejected the plaintiff's arguments, which are quite similar to

---

[3]The court has jurisdiction over this state law claim under 28 U.S.C. § 1367, which provides for supplemental jurisdiction. The parties do not dispute the fact that Illinois law applies to this case.

Johnstone's arguments in this case, reversed the appellate court's decision, and concluded that there is no independent action for breach of the duty of good faith in Illinois. 751 N.E.2d at 1131-32.

Johnstone seeks to distinguish *Voyles* by arguing that she is bringing a breach of contract claim and that *Voyles* prohibits only tort actions for breach of the duty of good faith. The court finds this argument unpersuasive because of both the similarity in facts between *Voyles* and the instant case, as well as the repeated refusals of courts to create a cause of action for breach of the implied duty of good faith under Illinois law. *See, e.g., Baxter Healthcare Corp. v. O.R. Concepts, Inc.,* 69 F.3d 785, 792 (7th Cir. 1995) (affirming the district court's dismissal of plaintiff's claim for breach of the implied covenant of good faith because Illinois law did not allow such a claim). Furthermore, the Seventh Circuit has applied Illinois law and held that a good faith claim is properly pleaded only within a breach of contract claim and not standing alone. *Echo, Inc. v. Whitson Co., Inc.,* 121 F.3d 1099, 1105 (7th Cir. 1997). Johnstone argues also that the court in *Voyles* based its decision on the assumption that the defendant has no obligation to explain to the plaintiff what it had done with her money – an assumption that, Johnstone argues, is not the case here because of the Bank's obligations under RESPA. The court disagrees with Johnstone's reading of *Voyles* and concludes that the case simply declines to create an exception to the general rule in Illinois courts that there is no independent action for breach of the implied duty of good faith. *Voyles,* 751 N.E.2d at 1131.

16

Consequently the court concludes that because Illinois law provides no cause of action for breach of the covenant of good faith, Johnstone has failed to state a claim in Count IV of her amended complaint. Therefore, Count IV of the amended complaint is dismissed.

### III. CONCLUSION

For the foregoing reasons the court grants defendant's motion as to Counts I and II only insofar as plaintiff has failed to state a claim for damage to her credit rating. The court denies defendant's motion as to all other claims in Counts I and II. The court grants defendant's motion as to Count IV.

Date: NOV 15 2001

James H. Alesia
United States District Judge

17